UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SYDNEY K. MALLORY,

        Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of Social Security,

        Defendant.

CASE NO. C04-5392KLS

ORDER REVERSING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff, Sydney K. Mallory, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-eight years old.[1] Tr. 25. She graduated from high school and completed two years of college. Tr. 69. She has past work experience as an activity director, daycare worker/provider

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

and print shop clerk/tester assistant. Tr. 16, 64.

Plaintiff filed concurrent applications for disability insurance and SSI benefits on June 12, 2001, alleging disability as of April 30, 2000, due to, among other impairments, carpal tunnel syndrome, cervical and lumbar pain, bipolar disorder, attention deficit disorder and a verbal learning disorder. Tr. 15, 56, 58, 63.  Both applications were denied initially and on reconsideration. Tr. 15, 25-27, 34.  Plaintiff requested a hearing, which was held on April 1, 2003, before an administrative law judge ("ALJ"). Tr. 436.  At the hearing, plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 436-63.

On May 1, 2003, the ALJ issued a decision finding plaintiff not disabled. Tr. 22-24.  Specifically, the ALJ found in relevant part as follows:

    (1)    at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

    (2)    at step two, plaintiff had "severe" impairments consisting of bipolar disorder and a verbal learning disorder;

    (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    (4)    at step four, plaintiff had the residual functional capacity for an unlimited level of exertion, with certain other non-exertional limitations, which precluded her from performing her past relevant work; and

    (5)    at step five, plaintiff was capable of performing other work existing in significant numbers in the national economy.

Tr. 23.  Plaintiff's request for review was denied by the Appeals Council on June 9, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. §§ 404.981, 416.1481.

On July 8, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1).  Plaintiff argues that decision should be reversed and remanded for an award of benefits because:

    (a)    the ALJ erred in evaluating the medical evidence in the record regarding her mental impairments and limitations;

    (b)    the ALJ erred in evaluating the lay witness evidence in the record;

    (c)    the ALJ erred in assessing her credibility;

    (d)    the ALJ erred in assessing her residual functional capacity; and

    (e)    the ALJ erred in finding her capable of performing other work existing in significant numbers in the national economy.

Defendant agrees that the ALJ's decision should be reversed in light of the ALJ's errors in evaluating the medical evidence in the record concerning plaintiff's mental impairments and limitations, the lay witness evidence in the record, and plaintiff's credibility. Nevertheless, defendant argues that this matter should be remanded for further administrative proceedings in order to more thoroughly address the evidence that was before the ALJ. For the reasons set forth below, however, the undersigned agrees with plaintiff, and finds that this matter should be remanded to the Commissioner for an award of benefits.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ Erred in Evaluating the Medical Evidence in the Record Regarding Plaintiff's Mental Impairments and Limitations

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Magallanes, 881 F.2d at 75.  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues, and defendant agrees, that the ALJ erred in evaluating the medical evidence in the record regarding the mental limitations found by Randy Hurst, Psy.D., one of the examining psychologists in the record.  Specifically, Dr. Hurst found plaintiff to be "markedly" (i.e., the "ability to function is severely limited but not precluded") impaired in her ability to respond to work pressures in a usual work setting and markedly to "extremely" (i.e., "[t]here is no useful ability to function in this area") impaired in her ability to respond appropriately to changes in a routine work setting. Tr. 434-35.  The ALJ rejected these limitations for the following reasons:

> The impartial medical expert, Dr. Gary Sacks[,] testified that the medical evidence of record does not support the "Marked-to-Extreme" assessments of Dr. Hurst.  Following his review of all the medical evidence of record as set forth above, and having heard the claimant[']s testimony, Dr. Sacks opined that the evidence of record does support [a]

REPORT AND RECOMMENDATION
Page - 4

      diagnosis of Bipolar-II Disorder and Verbal Learning Disorders, at "mild-to-moderate"
      levels of symptomology and limitations.

Tr. 19.  Plaintiff asserts Dr. Sacks never actually testified that the medical evidence in the record did not support the limitations found by Dr. Hurst.  The undersigned agrees. See Tr. 444-50.

    It is true Dr. Sacks testified that based on his review of the record, he believed plaintiff was mildly impaired in her activities of daily living, mildly impaired in social functioning, moderately impaired in her ability to concentrate, and had experienced one or two episodes of decompensation. Tr. 449-50.  It appears, however, that Dr. Sacks provided these limitations solely in response to questioning seeking to determine whether plaintiff met or equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 448-50.[2]  His testimony, therefore, is at best a questionable basis upon which to reject the limitations found by Dr. Hurst concerning plaintiff's remaining abilities to perform work-related activities, which the ALJ also must evaluate to determine plaintiff's residual functional capacity.[3]

    Even if the testimony of Dr. Sacks can be said to have addressed the limitations found by Dr. Hurst, furthermore, his opinion is "entitled to greater weight" than that of Dr. Sacks. Lester, 81 F.3d at 830-31.  In addition, Dr. Sacks' testimony may be substantial evidence only if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.  Although Bruce Eather, Ph.D., and

---

[2] To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920.  At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Pt. 404, Subpt. P, App. 1 (the "Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or equal a listed impairment, the claimant is deemed disabled. Id. The burden of proof is on the claimant to establish he meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098.

    A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.  Further, an impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." Social Security Ruling ("SSR") 83-19, 1993 WL 31248 *2.

[3] If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

    A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

REPORT AND RECOMMENDATION
Page - 5

John Robinson, Ph.D., two other non-examining physicians in the record, did opine that plaintiff was only moderately limited in her ability to respond appropriately to changes in the work setting (Tr. 190), they too are not examining physicians. In any event, no other medical source in the record has issued any opinion specifically contradicting Dr. Hurst's finding that plaintiff was markedly impaired in her ability to respond to work pressures. Accordingly, the undersigned finds the ALJ erred in rejecting it.

Plaintiff further argues the ALJ erred by failing to provide any reasons for rejecting many of the moderate mental functional limitations found by Drs. Eather and Robinson. Tr. 189-91. The undersigned agrees. While the ALJ appeared to have adopted at least some of these limitations in finding plaintiff to be capable of performing only simple, repetitive work, to be "limited to no more than occasional contact and interaction with the general public and supervisors," and to be able to function in a job with "little or no change" in its work environment (Tr. 21), he failed to address any of the others.[4] In addition, no other medical source in the record has provided an opinion that specifically contradicts the limitations found by Drs. Eather and Robinson. The undersigned thus finds the ALJ set forth insufficient reasons for rejecting those limitations as well.

II.   The ALJ Improperly Evaluated the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The specific record need not be cited in rejecting lay testimony, as long as "arguably germane reasons" for dismissing that testimony are noted by the ALJ. Id. at 512. This is true even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. Plaintiff argues the ALJ erred in not discussing or even mentioning the observations of Rosemary R. Stello, who was contracted by the state division of vocational rehabilitation to assess plaintiff's work and independent living capabilities.

Ms. Stello worked with plaintiff from early March through late April 2002, and reported that she became "overwhelmed by simple tasks," had problems "tracking information," and was "prone to magical thinking" and "cycled between depressive symptoms and manic symptoms several times" during the course

---

[4] For example, they found plaintiff to be moderately impaired in her ability to: maintain attention and concentration; work in coordination with or proximity to others; complete a normal workday and workweek; perform at a consistent pace; get along with co-workers or peers; and be aware of normal hazards and take appropriate precautions. Tr. 189-90.

REPORT AND RECOMMENDATION
Page - 6

1  of their meetings. Tr. 183-86. Ms. Stello also reported that plaintiff was "confused and scattered," and that
2  she was "unable to function well in any area of her life," as evidenced by her "inability to keep her home in
3  reasonable order, her inability to manage her finances, and in her inability to establish and keep significant
4  relationships." Tr. 183. Ms. Stello further noted that:

> In the midst of all of her psychiatric symptoms, she will have short periods of clarity and functioning. During this time she commits herself to things that she will not be able [to] complete once symptoms return.

7  Id. As such, it "became very obvious" plaintiff "was not employable," and Ms. Stello "strongly" believed
8  she was "unable to support herself in gainful employment." Id.

9  The ALJ did not address any of Ms. Stello's observations contained in her notes and reports, other
10 than to merely state he had "carefully considered all of the third party . . . statements in the file," and had
11 based his "decision on the substantial evidence in the record." Tr. 22. In no way, however, can this general
12 statement be considered "germane" to Ms. Stello's observations, and defendant does not argue otherwise.
13 Accordingly, the undersigned finds the ALJ erred in evaluating this evidence.

14 III.    The ALJ Erred in Assessing Plaintiff's Credibility

15 Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d
16 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749
17 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is
18 based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a
19 claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long
20 as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th
21 Cir. 2001).

22 To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the
23 disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible
24 and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12
25 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's
26 reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The
27 evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th
28 Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ discounted plaintiff's credibility in part in light of her work history. Tr. 20-21. The work attempts cited by the ALJ, however, for the most part actually tend to support plaintiff's credibility. At the hearing, plaintiff testified that although she has tried to find and keep work, she has had trouble with pace and staying focused on multi-task jobs, the pressure of dealing with other people often causes her head to go "blank" and she cannot think, and she has problems dealing with changes in a work setting. Tr. 440-43. Plaintiff further testified that she got "overwhelmed" by her job as an activity leader after having done that job for only one session. Tr. 442. She testified that she was able to do that job at the time because she was married, which provided her with needed structure and stability, and because she could take naps, watch cartoons and "play with the toys." Tr. 457. She also testified that she could perform her printer/assembler job at least in part because she had a lot of breaks and "down time." Tr. 458-59. Thus, plaintiff's testimony regarding her past jobs and her ability to work, along with the observations of Ms. Stello discussed above, do support her allegations that she is unable to maintain gainful employment.

The ALJ also attempted to minimize the nature and severity of plaintiff's mental impairments and limitations, stating that her testimony is not supported by the medical evidence in the record and that she has received inpatient treatment only one time. Tr. 21; see Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's complaints are inconsistent with medical evidence in record can satisfy clear and convincing requirement). As discussed above, however, the ALJ erred in evaluating the medical evidence in the record concerning plaintiff's mental impairments and limitations. In particular, the ALJ failed to provided any valid reasons for rejecting the findings of Dr. Hurst that she had a marked impairment in her ability to respond appropriately to work pressures and a marked to extreme impairment in her ability to respond appropriately to changes in a routine work setting, and the findings of both Dr. Eather and Dr. Robinson that she has several other additional moderate mental functional limitations. Further, the fact that plaintiff did require inpatient treatment again would tend to support her testimony.

REPORT AND RECOMMENDATION
Page - 8

1    Lastly, the ALJ discounted plaintiff's credibility for the following reasons:

> The claimant reported significant and independent activities of daily living to Dr. Jagoda [Pasic], in September of 2001, almost 18-months after her alleged disability onset date of April 30, 2000. She reported that she gets up in the morning and helps her 10-year old (now 12 year old) with breakfast and getting off to school. She reported being "on call" for work, claiming she does "shift work." She acknowledged that she attends to all household chores; does shopping and cooking; and "still finds time to attend to some of her pleasurable activities, including reading and talking to people; having quite an extensive network of friends. The claimant further reported that she goes to bed between 11 and 11:30 p.m., after watching television "for an hour or so." I note the claimant alleges "decreased sleep," but she does not mention sleep difficulties in describing her activities of daily living.

Tr. 21. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.

Although the ALJ accurately summarized the findings of Dr. Pasic regarding plaintiff's activities of daily living, those findings are contradicted by plaintiff's own report in applying for social security benefits and testimony at the hearing, and by the observations of Ms. Stello. For example, plaintiff reported that she has trouble remembering and keeping appointments and with finishing projects. Tr. 90-91. She further reported cooking only "quick stuff," doing the laundry and "mowing the grass" but having a "hard time" with the rest, and being "overwhelmed" with her house. Tr. 91. At the hearing, plaintiff testified that "[e]very day" she has trouble "getting out of bed" and doing housework, but that after talking to her friends she can then "get up and get the dishes done and do some laundry." Tr. 455. Again, as discussed above, Ms. Stello reported that plaintiff became "overwhelmed by simple tasks," and that she was unable "to keep her home in reasonable order," manage her finances, or "make any of her appointments on time." Tr. 183-84. In essence, Ms. Stello felt plaintiff was "unable to function well in any area of her life" (Tr. 184), thus further bolstering plaintiff's testimony.

Because there is no affirmative evidence in the record that plaintiff was malingering, the ALJ was required to provide "clear and convincing" reasons for discounting plaintiff's credibility. Lester, 81 F.2d at 834; O'Donnell, 318 F.3d at 818. Here, the ALJ has failed to do so. While it could be argued that there is some conflict in the evidence in the record concerning plaintiff's ability to engage in her activities of daily

REPORT AND RECOMMENDATION
Page - 9

living (e.g., between the findings of Dr. Pasic and the testimony and reports of plaintiff and Ms. Stello), it is far from clear that such evidence indicates plaintiff is able to engage in such activities for a substantial part of the day or that those activities are transferable to a work setting. Indeed, as discussed above, much of that evidence tends to support plaintiff's allegations. Accordingly, the undersigned finds the ALJ failed to provide clear and convincing reasons for discounting plaintiff's credibility.

IV. <u>The ALJ Erred in Finding Plaintiff Had the Residual Functional Capacity to Perform Other Work Existing in Significant Numbers in the National Economy</u>

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e), 416.920(d)-(e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). <u>Tackett</u>, 180 F.3d at 1100-1101; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1987); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." <u>Embrey</u>, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (because ALJ included all limitations that he found to exist, and those findings were supported by substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

Here, the ALJ assessed plaintiff with the following residual functional capacity:

I find the substantial evidence in the record demonstrates that the claimant has the residual functional capacity for "unlimited" exertion with vocational non-exertional limitations . . .

Her vocational non-exertional limitations require that she can only do Simple, Routine, Repetitive Work. She is limited to no more than occasional contact and interaction with the general public and supervisors and she is only able to function in [a] job with "little or no change," in its working environment.

Tr. 21. As discussed above, however, the ALJ erred in rejecting the marked to extreme mental limitations

1 found by Dr. Hurst and the additional moderate mental limitations found by Drs. Eather and Robinson. As
2 such, the ALJ also erred in assessing plaintiff's residual functional capacity.
3    At the hearing, the ALJ posed the following hypothetical question to the vocational expert:
4    Essentially, we have a 46-year-old female with 14 years of education, and this
   hypothetical person has no exertional limitations. But we would restrict this
5   hypothetical person to simple, repetitive tasks, with occasional contact with the public
   and supervisors, and little or no change in the work environment.
6 Tr. 461. Based on this hypothetical question, the vocational expert testified there were other jobs plaintiff
7 could perform. Tr. 462. The ALJ then relied on the vocational expert's testimony to find plaintiff capable
8 of performing other work existing in significant numbers in the national economy. Tr. 22-23. However,
9 because the hypothetical question was based on an erroneous residual functional capacity assessment, the
10 vocational expert's testimony was not based on an accurate description of plaintiff's remaining capabilities,
11 and therefore was not reliable. Accordingly, the ALJ erred in finding plaintiff not disabled at step five of the
12 disability evaluation process based on such testimony.
13 V.    This Matter Should Be Remanded for An Award of Benefits
14    The remaining question then is to determine the appropriate remedy for the ALJ's errors, that is to
15 remand this matter for further administrative proceedings or for an outright award of benefits. Defendant
16 argues that because there is conflicting evidence in the record regarding plaintiff's limitations, this matter
17 should be remanded to the Commissioner for further consideration of the medical evidence in the record,
18 plaintiff's testimony and the statements of the Ms. Stello. Plaintiff, on the other hand, argues that there are
19 no remaining issues to be resolved, and that the record establishes she is disabled. Accordingly, plaintiff
20 asserts this matter should be remanded for an award of benefits. The undersigned agrees.
21    The court may remand this case "either for additional evidence and findings or to award benefits."
22 Smolen, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, "the proper course, except
23 in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v.
24 Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is
25 clear from the record that the claimant is unable to perform gainful employment in the national economy,"
26 that "remand for an immediate award of benefits is appropriate." Id.
27    Benefits may be awarded where "the record has been fully developed" and "further administrative
28 proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

REPORT AND RECOMMENDATION
Page - 11

1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, the parties agree, and the undersigned has found, that the ALJ erred in evaluating the medical evidence in the record concerning plaintiff's mental impairments and limitations, erred in evaluating the statements of Ms. Stello, and erred in discounting plaintiff's credibility. Thus, the first part of the above test for determining whether to remand for an award of benefits has been satisfied.

Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). Likewise, "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the court "will not remand solely to allow the ALJ to make specific findings regarding that testimony." Id. (citation omitted). Instead, "that testimony is also credited as a matter of law." Id.

Because the ALJ erred in rejecting the opinion of Dr. Hurst that plaintiff is markedly impaired in her ability to respond appropriately to work pressures in a normal work setting, that opinion is credited as a matter of law. Further, it is clear from the record that the ALJ would be required to find plaintiff disabled based on that opinion, as, at the hearing, the vocational expert testified that "a marked inability to tolerate work pressure" would preclude the jobs she had identified plaintiff could do.[5] Tr. 462. Defendant asserts,

---

[5] Plaintiff also argues the limitations found by Drs. Eather and Robinson show that she is unable to sustain even unskilled, sedentary work as defined by 20 C.F.R. §§ 404.1521 and 416.921 and by SSR 96-9p. Sections 404.1521 and 416.921, however, define "basic work activities" with respect to the step two determination of whether a claimant has a "severe" impairment. The purpose of SSR 96-9p, furthermore, is to provide guidelines for evaluating the ability to do less than a full range of sedentary work. See 1996 WL 374185. Here, because plaintiff does not contest the ALJ's finding that she has the residual functional capacity for "unlimited" exertion, SSR 96-9p does not appear to be applicable. Even if it were applicable, however, plaintiff has not shown that the moderate limitations found by Dr. Eather and Dr. Robinson constitute such a "substantial loss of ability" so as to "substantially erode the unskilled sedentary occupational base" that would justify a finding of disability. Id. at *9.

In any event, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Here, although the ALJ did err in evaluating the opinions of Drs. Eather and Robinson, the vocational expert did not testify with respect to the limitations they found. As such, it would be premature remand for an outright award of benefits based on those limitations. Nevertheless, as discussed elsewhere herein, it is appropriate to remand this matter for an award of benefits based on the marked limitation found by Dr. Hurst, plaintiff's testimony, and the statements of Ms. Stello.

REPORT AND RECOMMENDATION
Page - 12

however, that the conflict between Dr. Hurst's opinion and the testimony of Dr. Sacks, plaintiff's mental limitations have not been clearly established. See Bunnell, 336 F.3d at 1116 (where ALJ is not required to find claimant disabled on crediting of evidence, this constitutes outstanding issue that must be resolved). As discussed above though, there is no real conflict here, as no other medical source in the record has given an opinion that contradicts Dr. Hurst's express finding that plaintiff was markedly impaired in her ability to respond appropriately to work pressures.

Because the ALJ also erred in evaluating the statements of Ms. Stello and in discrediting plaintiff's testimony regarding her symptom complaints, those statements and that testimony is credited as a matter of law as well. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000). (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment). Defendant again argues that the appropriate remedy here is remand for further consideration of plaintiff's testimony and Ms. Stello's statements. While the courts do have "some flexibility" in how they apply the "credit as true" rule when an ALJ improperly discredits a claimant's testimony in determining whether to remand the ALJ's decision for an award of benefits, here there is sufficient evidence, as discussed above, to find that plaintiff's testimony should be credited as a matter of law. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). Similarly, Ms. Stello's statements, also as discussed above, clearly support plaintiff's allegations of disability.

In essence, defendant argues that there still are outstanding issues in this case that must be resolved before a determination of disability can be made. The undersigned, however, finds that there are no such outstanding issues. Here, the uncontradicted opinion of Dr. Hurst concerning plaintiff's ability to respond appropriately to work pressures, plaintiff's own testimony, the statements and observations of Ms. Stello, and the testimony of the vocational expert, all support plaintiff's allegations that she is incapable of being gainfully employed due to her mental impairments and limitations.

Accordingly, the undersigned finds that the record has been fully developed in this case, and that remanding for further proceedings "would serve no further purpose." Smolen, 80 F.3d at 1292; Holohan, 246 F.3d at 1210. Indeed, allowing the Commissioner to decide these issues again "would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." Benecke, 379 F.3d at 595; see also Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) (noting that the "Commissioner, having lost

REPORT AND RECOMMENDATION
Page - 13

this appeal, should not have another opportunity . . . any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings.").

CONCLUSION

Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision is reversed, and this matter is remanded to the Commissioner for an award of benefits.

DATED this 14th day of September, 2005.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge